Docket No. 103541.

IN THE

SUPREME COURT

OF

THE STATE OF ILLINOIS

_____

*In re* LAKISHA M. (The People of the State of Illinois, Appellee, v. Lakisha M., a Minor, Appellant).

*Opinion filed January 25, 2008.*

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

**OPINION**

In this appeal, we are asked to consider whether the Illinois DNA indexing statute, section 5–4–3 of the Unified Code of Corrections (730 ILCS 5/5–4–3 (West 2004)), is unconstitutional as applied to respondent, Lakisha M., a minor who was adjudicated delinquent, by the circuit court of Cook County, after being found guilty of committing a nonsexual felony offense. The appellate court upheld the constitutionality of the statute. No. 1–05–2192 (unpublished order under Supreme Court Rule 23). For reasons that follow, we affirm.

BACKGROUND

On December 13, 2004, Lakisha and another female student were taken to the in-school detention room at Collins High School in

Chicago because they had been fighting. While there, Lakisha hit and kicked the dean of her high school as he blocked her attempt to resume fighting with the other girl. Based on this incident, a petition for adjudication of wardship was filed against Lakisha. After a trial, (705 ILCS 405/5–601 (West 2004)), a juvenile court found Lakisha guilty of committing the offense of aggravated battery, a Class 3 felony (720 ILCS 5/12–4(b)(3), (e) (West 2004)),[1] and adjudicated her delinquent. She was then sentenced to one year of probation and ordered to submit a saliva sample to the Department of State Police for deoxyribonucleic acid (DNA) analysis and indexing, as required by section 5–4–3(a)(3.5) of the Unified Code of Corrections (730 ILCS 5/5–4–3(a)(3.5) (West 2004)).

Lakisha appealed, challenging both her adjudication and the constitutionality of the DNA indexing statute as it applied to her. In an unpublished summary order, the appellate court affirmed Lakisha's adjudication and upheld the constitutionality of the statute. No. 1–05–2192 (unpublished order under Supreme Court Rule 23).

Lakisha petitioned this court for leave to appeal, which we granted. 210 Ill. 2d R. 315. We also permitted the Children and Family Justice Center of the Northwestern University School of Law, the Public Defender Service for the District of Columbia, and a coalition of juvenile justice, civil liberties and public defender organizations to file, jointly, an *amicus curiae* brief in support of respondent.

ANALYSIS

Lakisha has successfully completed her sentence of probation and does not challenge her adjudication in this court. The only issue she raises here is whether section 5–4–3 of the Unified Code of Corrections (730 ILCS 5/5–4–3 (West 2004)) is unconstitutional as

---

[1]Section 12–4(b)(3) of the Criminal Code of 1961 provides: "In committing a battery, a person commits aggravated battery if he or she: *** (3) Knows the individual harmed to be a teacher or other person employed in any school and such teacher or other employee is upon the grounds of a school or grounds adjacent thereto, or is in any part of a building used for school purposes." 720 ILCS 5/12–4(b)(3) (West 2004).

-2-

applied to her, a minor adjudicated delinquent for a nonsexual felony offense.

Section 5–4–3 is applicable to respondent pursuant to subsection (a)(3.5), which provides in pertinent part:

> (a) Any person *** found guilty or given supervision for any offense classified as a felony under the Juvenile Court Act of 1987 [705 ILCS 405/1–1 *et seq*.] *** shall, regardless of the sentence or disposition imposed, be required to submit specimens of blood, saliva, or tissue to the Illinois Department of State Police in accordance with the provisions of this Section, provided such person is:
>
> * * *
>
> (3.5) convicted or found guilty of any offense classified as a felony under Illinois law or found guilty or given supervision for such an offense under the Juvenile Court Act of 1987 on or after August 22, 2002."

Lakisha does not dispute that DNA analysis and typing produces a unique "print" or genetic profile for every person and, accordingly, is an accurate scientific process useful as a means of identification. Moreover, she acknowledges that the plain language of section 5–4–3(a)(3.5) explicitly and unequivocally requires her and every minor adjudicated delinquent based on the commission of a felony offense on or after August 22, 2002, to provide a DNA sample to the Illinois Department of State Police so that genetic marker grouping analysis information obtained from the sample may be included in state and national DNA databases. 730 ILCS 5/5–4–3(a), (f) (West 2006). Lakisha contends, however, that the compulsory extraction of her saliva, its analysis for DNA genetic marker groupings, and the perpetual storage and open-ended potential for repeated searches of her genetic profile, permitted by the statute, violate her right to be free from unreasonable searches and seizures as guaranteed by the fourth amendment to the United States Constitution (U.S. Const., amends. IV, XIV), as well as article I, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §6). She also contends that the statute, when applied to minors like herself, permits an unreasonable invasion of privacy, in violation of the privacy clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §6).

We begin our analysis by noting that all statutes are presumed constitutional and that the party challenging a statute's validity bears the burden of demonstrating a clear constitutional violation. *People v. Wilson*, 214 Ill. 2d 394, 398-99 (2005). A court must construe a statute so as to affirm its constitutionality, if reasonably possible. *People v. Funches*, 212 Ill. 2d 334, 339-40 (2004), citing *People v. Greco*, 204 Ill. 2d 400, 406 (2003). Our review of a statute's constitutionality is *de novo*. *People v. Dinelli*, 217 Ill. 2d 387 (2005).

The Fourth Amendment

The fourth amendment of the United States Constitution, applicable to the states through the due process clause of the fourteenth amendment, guarantees to all citizens the right to be free from unreasonable searches and seizures. *People v. Lampitok*, 207 Ill. 2d 231, 240 (2003). The "touchstone" of fourth amendment analysis is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security" (*Terry v. Ohio*, 392 U.S. 1, 19, 20 L. Ed. 2d 889, 904, 88 S. Ct. 1868, 1878-79 (1968)) and reasonableness depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers" (*United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 45 L. Ed. 2d 607, 614-15, 95 S. Ct. 2574, 2579 (1975)). *Pennsylvania v. Mimms*, 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330 (1977). See also *Samson v. California*, 547 U.S. 843, ___, 165 L. Ed. 2d 250, 256, 126 S. Ct. 2193, 2197 (2006); *Lampitok*, 207 Ill. 2d at 248 (whether a search is unreasonable within the meaning of the fourth amendment depends on the degree to which the search intrudes upon the individual's privacy balanced against the degree to which it is needed to promote a legitimate governmental interest), citing *United States v. Knights*, 534 U.S. 112, 151 L. Ed. 2d 497, 122 S. Ct. 587 (2001).

Lakisha's burden in this case is considerable, not only because she must overcome the presumption of constitutionality, but also because, in *People v. Garvin*, 219 Ill. 2d 104 (2006), this court considered and upheld the constitutionality of section 5–4–3 (730 ILCS 5/5–4–3 (West 2002)), as applied to adult felons.

In *Garvin*, the defendant was convicted of burglary and theft, sentenced to a term of 6½ years' imprisonment, and directed to provide a blood sample for DNA analysis pursuant to section 5–4–3. On appeal, the defendant argued that the DNA indexing statute was unconstitutional under the search and seizure provisions of both our federal and state constitutions, because it permitted warrantless, suspicionless searches without a showing of "special need" or other justification. *Garvin*, 219 Ill. 2d at 117. The defendant also contended that the statute was unconstitutional as applied to him because he was convicted of a nonsexual felony and, as a result, the potential usefulness of his stored DNA in solving future crimes was greatly diminished. *Garvin*, 219 Ill. 2d at 117.

Addressing these claims, we found that the compelled blood extraction, though a "search" within the meaning of the fourth amendment, was reasonable. This was true whether we applied the "special needs test" advocated by the defendant or the less rigorous "pure balancing test" for determining reasonableness. *Garvin*, 219 Ill. 2d at 118. In reaching this determination, we held that the primary purpose of our DNA indexing statute is the creation of a criminal DNA database that can be used to "absolve innocents, identify the guilty, deter recidivism by identifying those at a high risk of reoffending, or bring closure to victims" and that this purpose serves a special need beyond that of general law enforcement, thereby satisfying the "special need" prong of the reasonableness test. *Garvin*, 219 Ill. 2d at 121-22. Further, we held that the state has an interest in creating a DNA database to "[p]romot[e] an effective and accurate criminal justice system and increas[e] public safety through either deterrence or removal of criminal offenders from the streets" and that these interests are compelling. *Garvin*, 219 Ill. 2d at 122. Weighing the state's interests against a felon's privacy interest in his genetic information, the scale tipped heavily in favor of the state. *Garvin*, 219 Ill. 2d at 124-25. This is because the intrusion caused by taking a DNA sample is almost negligible, a felon's reasonable expectation of privacy is greatly diminished, and access to the information stored in the database is limited to peace officers. *Garvin*, 219 Ill. 2d at 123-24. Finally, we held that the fact that the defendant was convicted of a nonsexual felony offense was of no consequence because one could imagine "myriad examples involving other felonies" where the

perpetrator's DNA evidence might be useful. *Garvin*, 219 Ill. 2d at 124.

Lakisha acknowledges our holding in *Garvin*, but argues that when weighing the state's interests against the privacy interests of a minor adjudicated delinquent, rather than a convicted felon, different considerations inform the "reasonableness" inquiry and cause the balance to tip in the minor's favor. The State, however, maintains that the fourth amendment balancing test for determining reasonableness is the same for adjudicated minors as it is for adult felons and that we should continue to follow our decision in *Garvin*. We agree with the State.

DNA statutes, similar to our Illinois statute, have been enacted in all 50 states. Though the scope of these statutes varies, constitutional challenges brought against these statutes uniformly have been rejected. See *People v. Hunter*, 358 Ill. App. 3d 1085 (2005); *People v. Garvin*, 349 Ill. App. 3d 845 (2004). While it is undisputed that the bodily intrusion involved in taking a blood, saliva, or tissue sample for DNA analysis, as required by these indexing statutes, is a search within the meaning of the fourth amendment, these searches have universally been upheld as reasonable. Courts have found these statutes to be reasonable because the intrusion involved in taking a DNA sample is very slight and the governmental interest in the information obtained as a result of these searches outweighs any legitimate privacy interests of the offender, whether a minor or an adult. See R. Miller, *Validity, Construction, and Operation of State DNA Database Statutes*, 76 A.L.R.5th 239 (2000) (courts have uniformly expressed the view that DNA database statutes do not violate the fourth amendment (and, occasionally, analogous state constitutional provisions), whether the courts have applied traditional fourth amendment analysis, the doctrine of prisoners' reduced expectation of privacy, or the "special needs" doctrine).

Moreover, no court has ever held that a juvenile is entitled to greater fourth amendment protections by reason of her minority. Those courts that have addressed the constitutionality of state statutes requiring juveniles to provide DNA samples have consistently upheld them. See *In re Calvin S.*, 150 Cal. App. 4th 443, 58 Cal. Rptr. 3d 559 (2007) (requiring juvenile found to have committed felony car theft and driving without a license to provide DNA sample did not

violate fourth amendment; intrusion into juvenile's fourth amendment interests, including his interest in confidentiality of juvenile court proceedings, did not outweigh legitimate government interest in DNA testing as aid to law enforcement); *A.A. ex rel. B.A. v. Attorney General*, 189 N.J. 128, 914 A.2d 260 (2007) (DNA testing is a one-time procedure that applies equally to juveniles found delinquent and adults found guilty of a crime and acts as an identification device, much like a fingerprint, stored in secure local and national databases); *In re T.E.H.*, 2007 PA Super. 193 (trial court had authority to order juvenile to submit to DNA sampling under the DNA act after adjudication of delinquency); *In re Leopoldo L.*, 209 Ariz. 249, 99 P.3d 578 (App. 2004); *In re D.L.C.*, 124 S.W.3d 354 (Tex. App. 2003); *L.S. v. State*, 805 So. 2d 1004 (Fla. App. 2001) (state statute imposing DNA testing requirements on felons convicted of specific, enumerated offenses did not violate a juvenile's right to be free of unreasonable searches and seizures, equal protection, or right of privacy under the state constitution; any intrusion to be suffered by the juvenile was outweighed by the state's interests in identifying perpetrators, exonerating innocent persons charged with criminal offenses, and preventing the furtherance of criminal activity); *In re Nicholson*, 132 Ohio App. 3d 303, 724 N.E.2d 1217 (1999) (fourth amendment challenge of Ohio DNA statute as applied to juveniles rejected); *In re Appeal in Maricopa County Juvenile Action Numbers JV–512600 & JV–512797*, 187 Ariz. 419, 930 P.2d 496 (App. 1996) (statute did not violate the juveniles' right to privacy or authorize an unreasonable search and seizure); *In re Orozco*, 129 Or. App. 148, 878 P.2d 432 (1994) (Oregon DNA statute did not violate fourth amendment when applied to juvenile sex offender).

Although Lakisha recognizes that other jurisdictions have upheld the constitutionality of DNA indexing statutes as applied to juveniles, she argues that these out-of-state opinions are not persuasive and are, for the most part, "mid-level appellate court decisions" that are not binding on this court. She maintains that "the fourth amendment balancing test employed in *Garvin* involves different considerations when applied in the juvenile context" and urges this court to hold our indexing statute constitutionally unreasonable because it treats adjudicated minors the same as adult felons.

First, relying on *People v. Taylor*, 221 Ill. 2d 157, 168-69 (2006), Lakisha argues that a delinquency adjudication is not the equivalent of a criminal felony conviction and, for that reason, delinquent minors do not have the same diminished expectation of privacy as convicted felons. Lakisha also points to certain provisions of the Juvenile Court Act and our court rules that are designed to protect the confidentiality of a juvenile's identity. See 210 Ill. 2d R. 660(c) (minors, including adjudicated delinquent minors, must be referred to by their first name and last initial, or simply by their initials, in appellate proceedings); 705 ILCS 405/1–7, 1–8, 5–901(1)(a), 5–905(1) (West 2004) (strict limits placed on access to juvenile court records and files). She maintains that, because our juvenile justice system affords juveniles greater privacy protections than the criminal justice system gives to adults, juveniles' expectations of privacy are not only undiminished, they are significantly greater and, thus, juveniles have heightened privacy interests.

Lakisha further contends that maintaining confidentiality of a juvenile's identity is consistent with the goal of rehabilitation, which "remains a more important consideration in the juvenile justice system than in the criminal justice system" (*Taylor*, 221 Ill. 2d at 170), and with the provisions of the Juvenile Court Act that provide certain juveniles the opportunity to have their delinquency records expunged (see 705 ILCS 405/5–915 (West 2006)). She notes that a juvenile's expungement rights under the Juvenile Court Act do not extend to DNA indexing. See 730 ILCS 5/5–4–3(f–1) (West 2006). Thus, even if a juvenile succeeds in having her juvenile records expunged under the Juvenile Court Act, she will remain in the DNA database for the rest of her life. From this Lakisha concludes that applying the indexing statute to juveniles is at odds with the purpose and goals of the Juvenile Court Act.

We are not persuaded by Lakisha's arguments. Initially, we note that her reliance on our decision in *People v. Taylor*, 221 Ill. 2d 157 (2006), is misplaced. *Taylor* had nothing to do with DNA extraction or the fourth amendment. In *Taylor*, we were asked to consider whether the escape statute, which applies to a "person convicted of a felony," would encompass a juvenile adjudicated delinquent of a felony offense. We held, as a matter of statutory construction, a delinquent juvenile was not "a person convicted of a felony." We said,

"We simply do not believe that the term 'person convicted of a felony' can be read to include juvenile adjudications under the plain meaning of the existing statutory framework at issue here." *Taylor*, 221 Ill. 2d at 164. We came to this belief based on the fact that, at the time of the defendant's adjudication, the Juvenile Court Act did not provide for a plea or a finding of guilty of an offense[2] and because, in most cases, juveniles do not have the right to a jury trial and "the law does not authorize a felony conviction in the absence of a right to a trial by jury." *Taylor*, 221 Ill. 2d at 169.

In the case at bar, we are not faced with a question of statutory construction. The DNA indexing statute explicitly and unequivocally includes juveniles adjudicated delinquent for felony offenses within its scope. Further, while it is undoubtedly true that a delinquency adjudication is still not the legal equivalent of a felony conviction despite the amendments to the Act, it does not follow inexorably that a juvenile adjudicated delinquent for committing a felony offense does not have a diminished expectation of privacy. When a minor, like respondent here, is found guilty of committing a felony offense and is

---

[2]In *Taylor*, it was pointed out that, after the defendant's adjudication, the Juvenile Court Act was "radically altered" when the General Assembly amended the Act with Public Act 90–590, effective January 1, 1999. See 705 ILCS Ann. 405/5–101 *et seq*. (Smith-Hurd 1999). We noted:

> "The legislature has now indicated an intent that the term ' "trial" replace the term "adjudicatory hearing" and be synonymous with that definition as it was used in the [Act].' 705 ILCS 405/5–101(17) (West 1998). Furthermore, the Act now allows for a 'plea of guilty' in a delinquency proceeding (705 ILCS 405/5–605 (West 1998)), and if a trial is conducted, the court is required, at its conclusion, to 'make and note in the minutes of the proceeding a finding of whether or not the minor is *guilty*.' (Emphasis added.) 705 ILCS 405/5–620 (West 1998). If the court finds the minor 'guilty,' the cause then proceeds to a 'sentencing hearing,' ***. 705 ILCS 405/5–620, 5–705, 5–710 (West 1998). In sum, the Act now provides for pleas of guilty, findings of guilty and sentencing–language which effectively tracks with the first clause of the term 'conviction' as defined in the Code." *Taylor*, 221 Ill. 2d at 167.

made a ward of the court (see 705 ILCS 405/5–620 (West 2004) ("After hearing the evidence, the court shall make and note in the minutes of the proceeding a finding of whether or not the minor is guilty. *** If the court finds that the minor is guilty, the court shall then set a time for a sentencing hearing to be conducted under Section 5–705 at which hearing the court shall determine whether it is in the best interests of the minor and the public that he or she be made a ward of the court")), her identity is a matter of state interest and, as a result, she can no longer have the same expectation of privacy enjoyed by ordinary, law-abiding citizens.

We also do not agree that a juvenile's expectation of privacy with regard to her DNA identifying information is increased because certain provisions of our Juvenile Court Act serve to maintain the confidentiality of juveniles' identities. The same argument was advanced and rejected in *In re Calvin S.*, 150 Cal. App. 4th 443, 58 Cal. Rptr. 3d 559 (2007). We find that court's reasoning to be sound.

In *In re Calvin S.*, the minor was adjudicated delinquent for felony car theft and required to provide a DNA sample in accord with the California DNA indexing statute, Penal Code section 296. Like respondent here, the minor argued that "his interest in keeping his juvenile adjudication confidential significantly alters the *Fourth Amendment* balancing of interests found in the decisions upholding the constitutionality of Penal Code section 296 when the offender is an adult." (Emphasis in original.) *In re Calvin S.*, 150 Cal. App. 4th at 448, 58 Cal. Rptr. 3d at 562. In response, the Third Appellate District of the California Court of Appeal acknowledged the state's strong public policy favoring confidentiality of juvenile proceedings and the statutory provisions supporting this policy. Nonetheless, the court held that the compulsory extraction and testing of the minor's DNA required by its state indexing statute had "little impact on the minor's interest in the privacy of juvenile proceedings." *In re Calvin S.*, 150 Cal. App. 4th at 448, 58 Cal. Rptr. 3d at 562.

The California court noted that its DNA indexing statute permitted the DNA and forensic identification profiles to be used only for certain identification purposes and permitted "with few exceptions" release of the information only to law enforcement agencies. *In re Calvin S.*, 150 Cal. App. 4th at 448-49, 58 Cal. Rptr. 3d at 562-63. Also, the statute made it a criminal offense for a person to use DNA specimens

or profiles for other purposes or to disclose the DNA information to an unauthorized person or agency. *In re Calvin S.*, 150 Cal. App. 4th at 448-49, 58 Cal. Rptr. 3d at 562-63. The court then concluded: "With the use of DNA samples and the DNA database so limited, making juveniles subject to the provisions of Penal Code section 296 is hardly a public announcement of a juvenile offender's felony conviction." *In re Calvin S.*, 150 Cal. App. 4th at 449, 58 Cal. Rptr. 3d at 562.

Similarly, our Illinois DNA indexing statute restricts the dissemination of genetic marker grouping analysis information to "peace officers of the United States, of other states or territories, of the insular possessions of the United States, of foreign countries duly authorized to receive the same, to all peace officers of the State of Illinois and to all prosecutorial agencies, and to defense counsel as provided by Section 116–5 of the Code of Criminal Procedure of 1963." 730 ILCS 5/5–4–3(f) (West 2004). Also, our statute limits the permitted uses for the genetic marker grouping analysis information to certain enumerated law enforcement purposes (730 ILCS 5/5–4–3(f) (West 2004))[3] and provides that use of the "genetic marker grouping analysis information, or any other information derived from a DNA sample, beyond the authorized uses as provided under this Section, or any other Illinois law, is guilty of a Class 4 felony, and shall be subject to a fine of not less than $5,000" (730 ILCS 5/5–4–3(f–5) (West 2004)).

The provisions of our Juvenile Court Act that afford minors greater privacy protections do so with respect to the general public. There is nothing to suggest that these provisions indicate a legislative

---

[3]The permitted uses are: "(i) valid law enforcement identification purposes and as required by the Federal Bureau of Investigation for participation in the National DNA database, (ii) technology validation purposes, (iii) a population statistics database, (iv) quality assurance purposes if personally identifying information is removed, (v) assisting in the defense of the criminally accused pursuant to Section 116–5 of the Code of Criminal Procedure of 1963, or (vi) identifying and assisting in the prosecution of a person who is suspected of committing a sexual assault as defined in Section 1a of the Sexual Assault Survivors Emergency Treatment Act." 730 ILCS 5/5–4–3(f) (West 2004).

intent to provide juveniles with greater privacy rights with respect to law enforcement officials, who are the only ones given access to the genetic marker information derived from the searches required by the DNA indexing statute. 730 ILCS 5/5–4–3(f) (West 2004). We conclude, as did the court in *In re Calvin S.*, that our state's public policy favoring confidentiality of juvenile proceedings, and the statutory provisions supporting that policy, do not alter a delinquent juvenile's expectation of privacy with respect to the minimally intrusive, compulsory extraction of DNA, as required by our indexing statute.

We note, too, that our legislature has explicitly set forth as "important purposes" of the Juvenile Court Act protecting citizens from juvenile crime, holding juvenile offenders directly accountable for their acts, and rehabilitating juveniles to prevent further delinquent behavior. 705 ILCS 405/5–101 (West 2004). In *Garvin*, we held that DNA sampling has a deterrent and rehabilitating effect because it identifies those at risk of reoffending. *Garvin*, 219 Ill. 2d at 122. Therefore, maintaining a delinquent juvenile's genetic analysis information in state and national databanks for law enforcement purposes advances, rather than conflicts with, the goals of our Juvenile Court Act. See *In re Calvin S.*, 150 Cal. App. 4th at 449, 58 Cal. Rptr. 3d at 563 (the juvenile court's goals of protecting the public and rehabilitating the minor are aided by DNA testing of juvenile felons by facilitating the detection, apprehension, and conviction of offenders).

Lakisha next argues that the fourth amendment reasonableness balance must tip in her favor because the state's interests in obtaining an adjudicated minor's DNA are not as compelling as they are for a convicted felon. According to Lakisha, adjudicated minors are not as culpable as adult offenders (see *In re Rodney H.*, 223 Ill. 2d 510, 520 (2006) (" 'no suggestion or taint of criminality attaches to any finding of delinquency' "), quoting *In re Dow*, 75 Ill. App. 3d 1002, 1006 (1979)) and have a greater potential for reform (*Roper v. Simmons*, 543 U.S. 551, 570, 161 L. Ed. 2d 1, 22, 125 S. Ct. 1183, 1195-96 (2005) ("it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed")). She maintains, therefore, that there is less potential that a juvenile's DNA will be useful for

solving future crime, particularly when the juvenile has been adjudicated based on the commission of a nonsexual offense. She concludes that extracting DNA from juvenile offenders who commit nonsexual felony offenses does not advance state interests and, as a result, the DNA indexing statute is constitutionally unreasonable when applied to them. Lakisha further adds that, when weighing the state's interests, we should also recognize that the indexing statute, as applied to juveniles, "sweeps too broadly" because it permits the state to retain and perpetually examine a delinquent juvenile's DNA while affording juveniles only limited opportunity to have their DNA expunged from the database. 730 ILCS 5/5–4–3(f–1) (West 2004) (expungement is available only upon "reversal of a conviction based on actual innocence or *** the granting of a pardon").

We find Lakisha's reasoning to be faulty. While it may be true that juveniles, because of their lack of maturity, often act impetuously and may be more easily influenced by others, that does not negate the fact that juvenile crime is a serious concern of the state. Our legislature has declared that "despite the large investment of resources committed to address the needs of the juvenile justice system of this State, cost of juvenile crime continues to drain the State's existing financial capacity, and exacts traumatic and tragic physical, psychological and economic damage to victims." 705 ILCS 405/5–201 (West 2004). In addition, our legislature has recognized that "many adults in the criminal justice system were once delinquents in the juvenile justice system." 705 ILCS 405/5–201 (West 2004). Thus, Lakisha's assertion that the collection, analysis, and storage of delinquent juveniles' DNA does not advance the "fundamental concerns" of the state and law enforcement for promoting an effective and accurate criminal justice system and increasing public safety (*Garvin*, 219 Ill. 2d at 122) cannot be sustained.

Also, we continue to believe, as we held in *Garvin*, that a person's status as a nonsexual felony offender does not diminish the state's interest in the person's DNA. There are a number of ways that a nonsexual offender might leave behind DNA and, as techniques in DNA retrieval and analysis continue to advance, the possibility that such person's DNA information will be useful in solving future crimes should increase. *Garvin*, 219 Ill. 2d at 124-25.

-13-

Finally, to the extent that Lakisha presents an overbreadth argument, it must be rejected. As we said in *Garvin*, the overbreadth doctrine has only been applied in relation to first amendment constitutional challenges. It is not cognizable in the context of a fourth amendment challenge. *Garvin*, 219 Ill. 2d at 125.

Lakisha raises one last argument in her fourth amendment challenge to Illinois' DNA indexing statute. She argues that, when deciding reasonableness, the balancing test here must be different from that in *Garvin* because the indexing statute has been amended and now permits genetic marker profile information obtained from extracted DNA to be used for "a population statistics database." See 730 ILCS 5/5–4–3(f)(iii) (West 2004). She contends that this amendment is constitutionally problematic for two reasons: (1) the provision does not include language requiring personal identifying information to be removed and, consequently, she alleges, this additional use constitutes a much greater intrusion into an individual's privacy; (2) the term "population statistics database" is not defined and, thus, she contends, there exists the potential that the DNA collected pursuant to statute will be used to develop a general information bank that will collect and monitor personal information for behavioral research or will be used in a way that discriminates against certain individuals or groups.

We agree with the State that respondent's arguments are largely speculative, made-up factual hypotheticals that are not present in the case at bar. Respondent does not allege that her DNA has been used improperly or that her genetic information has been used to discriminate against her in any way.

Additionally, as respondent, herself, acknowledges, a regulation promulgated by the Department of State Police mandates that genetic marker group analysis information may be used for a population statistics database only "if personal identifying information is removed." 20 Ill. Adm. Code §1285.60(b) (2007) (amended at 31 Ill. Reg. 9249, eff. June 12, 2007). Thus, respondent cannot show, at the present time, that our DNA indexing statute is being unconstitutionally applied to her because the statute permits genetic marking group analysis to be used for a population statistic database. In light of the fact that personal identifying information must be removed, any use of respondent's genetic marker analysis information

for a population statistic database does not constitute a greater intrusion than was contemplated in *Garvin.*

As a final matter we note that, because the taking of respondent's DNA pursuant to statute does not violate the fourth amendment, it follows that the perpetual storage and potential future use of the genetic marker grouping analysis information derived from the sample does not give rise to an independent fourth amendment claim. If the initial search is lawful, the subsequent use of the information by the limited number of law enforcement officials, as currently set forth in the statute, is not a separate fourth amendment search because there is no additional invasion of the respondent's privacy interest. See *Johnson v. Quander*, 440 F.3d 489 (D.C. Cir. 2006); *A.A. ex rel. B.A. v. Attorney General*, 189 N.J. 128, 914 A.2d 260 (2007).

The Search and Seizure Provision of Our Illinois Constitution

Lakisha maintains that, even if we find that the statute conforms with the fourth amendment, we should find that the statute violates "her broader rights" under the search and seizure portion of the Illinois Constitution of 1970.

In *People v. Caballes*, 221 Ill. 2d 282, 309 (2006), we recently explained our "limited lockstep approach" to analyzing cognate provisions in the Illinois and United States constitutions. Citing L. Friedman, *The Constitutional Value of Dialogue and the New Judicial Federalism*, 28 Hastings Const. L.Q. 93, 104 (2000), we said, "Under this approach, this court will 'look first to the federal constitution, and only if federal law provides no relief turn to the state constitution to determine whether a specific criterion–for example, unique state history or state experience–justifies departure from federal precedent.' " *Caballes*, 221 Ill. 2d at 309-10.

In the case at bar, respondent notes that Illinois was home to the first juvenile court and contends that our "unique history and values when it comes to the treatment of juvenile offenders justifies a broader interpretation of its search and seizure rights [for juveniles] under the state constitution." She urges us to "strike down" the DNA indexing statute as it applies to juveniles so that Illinois can "reaffirm its long-held belief in the rehabilitative potential and privacy rights of minors."

-15-

The problem with Lakisha's argument is that it ignores the fact that collection and storage of DNA pursuant to our indexing statute has a deterrent and rehabilitative effect that actually advances the goals of the Juvenile Court Act. As we concluded above, requiring juveniles to submit to the minimally intrusive, compulsory extraction of their DNA, in accord with our indexing statute, does not conflict with this state's long-standing public policy favoring rehabilitation of juvenile offenders and confidentiality of juvenile proceedings. Thus, in this case, we find no basis for interpreting the search and seizure provision of the Illinois Constitution as providing any greater rights to juveniles than the fourth amendment.

Privacy Clause of the Illinois Constitution

As her final claim, Lakisha argues that the extraction of her DNA pursuant to the indexing statute violates the privacy clause of the Illinois Constitution, which provides:

> "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, *invasions of privacy* or interceptions of communications by eavesdropping devices or other means." (Emphasis added.) Ill. Const. 1970, art. I, §6.

In *In re May 1991 Will County Grand Jury*, 152 Ill. 2d 381, 391 (1992), we held, "the Illinois Constitution goes beyond Federal constitutional guarantees by expressly recognizing a zone of personal privacy." Further, we held that "a person has a reasonable expectation that he will not be forced to submit to a close scrutiny of his personal characteristics, unless for a valid reason." *In re May 1991 Will County Grand Jury*, 152 Ill. 2d at 391-92. Thus, we recognized in *In re May 1991 Will County Grand Jury* that the taking of physical samples, such as fingerprints, palm prints, blood, head hair, and pubic hair, may implicate not only the fourth amendment, but also the privacy clause of our constitution. See *People v. Caballes*, 221 Ill. 2d 282, 320-21 (2006). However, in *Caballes*, we held that, even if there is a right to privacy under article I, section 6, the critical question is whether the state's invasion of individual privacy is reasonable. *Caballes*, 221 Ill. 2d at 321. Reasonableness, with regard to our state constitution's privacy clause, depends, largely, on the extent of one's expectation of

privacy under the circumstances presented, as well as the degree of intrusiveness of the invasion of privacy. *Caballes*, 221 Ill. 2d at 327, citing *People v. Cornelius*, 213 Ill. 2d 178, 193-94 (2004) (claims alleging a violation of our state privacy clause require a twofold inquiry: first, whether the party has a reasonable expectation of privacy in the information he seeks to protect and, second, whether the statute unreasonably invades that expectation of privacy).

In the present case, we agree with respondent that the extraction of her DNA involves an invasion of her actual physical body and, therefore, falls within the "zone of privacy" protected by our constitution's privacy clause. See *Caballes*, 221 Ill. 2d at 329-30. Nevertheless, we find that the minimally intrusive nature of the invasion required for a buccal swab, coupled with her diminished expectation of privacy as a result of her delinquency adjudication, makes the invasion of privacy reasonable. Further, we find that the statute does not unreasonably invade respondent's privacy because the genetic analysis information derived from the DNA samples is not disseminated to the general public, but only to law enforcement officials. Consequently, we find that our indexing statute does not violate the privacy clause of our state constitution.

## CONCLUSION

Respondent challenges the constitutionality of the Illinois DNA indexing statute, section 5–4–3 of the Unified Code of Corrections (730 ILCS 5/5–4–3 (West 2004)), as it applies to her, a delinquent juvenile found guilty of committing a nonsexual felony offense. For reasons we have explained, we uphold the constitutionality of the statute, and therefore affirm the judgment of the appellate court.

*Appellate court judgment affirmed.*