# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *In re B.C.P.*, 2013 IL 113908

---

| | |
|---|---|
| Caption in Supreme Court: | *In re* B.C.P., a Minor (The People of the State of Illinois, Appellant, v. B.C.P., Appellee). |
| Docket No. | 113908 |
| Filed | June 20, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Illinois Supreme Court exercised its rulemaking authority to allow the State to take an interlocutory appeal from an order suppressing evidence in a juvenile delinquency proceeding—Rule 660(a) modified to incorporate Rule 604(a)(1), with such appeals to be expedited under Rule 660A. |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Henry County, the Hon. Ted J. Hamer, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal

Lisa Madigan, Attorney General, of Springfield, and Terence M. Patton, State's Attorney, of Cambridge (Michael A. Scodro, Solicitor General, and Michael M. Glick and Katherine D. Saunders, Assistant Attorneys General, of Chicago, and Patrick Delfino, Stephen E. Norris and Rebecca E. McCormick, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

Michael J. Pelletier, State Appellate Defender, Peter A. Carusona, Deputy Defender, and Gabrielle Green, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

Justices

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Garman, Karmeier, and Burke concurred in the judgment and opinion.

Justice Theis dissented, with opinion.

## OPINION

¶ 1    At issue is whether the State should be allowed to take an interlocutory appeal from an order granting a motion to suppress evidence in a proceeding under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq*. (West 2010)).

¶ 2                    BACKGROUND

¶ 3    The State filed a petition for adjudication of wardship, alleging that B.C.P. was delinquent because he committed two counts of aggravated criminal sexual abuse. 720 ILCS 5/12-16(c)(2)(i) (West 2010). B.C.P. moved to suppress his confession on the grounds that he was not advised of his *Miranda* rights. Following a hearing, the trial court granted the motion to suppress. The State filed a certificate of impairment and a notice of appeal. The appellate court dismissed the appeal for lack of jurisdiction. 2012 IL App (3d) 100921. The court reasoned that no supreme court rule specifically allowed the State to take an interlocutory appeal from the granting of a motion to suppress in a juvenile delinquency proceeding. *Id.* ¶¶ 8, 9. We allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 4                    ANALYSIS

¶ 5    The State argues that it should have the same right to appeal interlocutory suppression orders in juvenile delinquency cases as it has in criminal cases. The State's right to appeal an order granting a motion to suppress evidence in criminal cases is found in Illinois

Supreme Court Rule 604(a)(1) (eff. July 1, 2006), which provides as follows:

"(1) *When State May Appeal*. In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114-1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence \*\*\*."

Illinois Supreme Court Rule 660(a) (eff. Oct. 1, 2001) covers appeals in delinquent minor cases, but it expressly incorporates the criminal appeals rules only as to final judgments:

"Appeals from final judgments in delinquent minor proceedings, except as otherwise specifically provided, shall be governed by the rules applicable to criminal cases."[1]

Illinois Supreme Court Rule 662 (eff. Oct. 1, 1975) allows for appeals of certain interlocutory orders in juvenile cases, but an order granting a motion to suppress is not one of them.

¶ 6     On appeal, the State concedes that these rules do not expressly allow the State to take an appeal from an interlocutory order suppressing evidence in a juvenile delinquency proceeding. However, the State points out that, in *People v. DeJesus*, 127 Ill. 2d 486 (1989), and *People v. Martin*, 67 Ill. 2d 462 (1977), this court allowed the State to take appeals in juvenile delinquency proceedings in situations that were not expressly covered by the rules. The State then argues that the reasoning in those cases should be extended to cover the present case. The State also argues that public policy concerns should give it a right to appeal in this situation, and that these concerns have been made stronger since the 1998 amendments to the Juvenile Court Act. By contrast, respondent argues that no supreme court rule gives the State the right to appeal in this situation. Respondent acknowledges the State's policy concerns, but points out that there are policy concerns on the other side as well and argues that these matters would be better considered by this court's rules committee.

¶ 7     First, we must clarify what will guide our consideration of this issue. Both parties cite the familiar rule that the same rules apply to the construction of statutes and supreme court rules (*People v. Marker*, 233 Ill. 2d 158, 164-65 (2009)), and both parties then cite the basic rules of statutory construction—determining the intent of the drafter, not departing from plain language that is clear and unambiguous, *etc*. However, we do not believe that construction of a rule is at issue here. Even the State fully concedes that the supreme court rules, as currently written, do not allow for it to take an interlocutory appeal in this situation. What the State asks for is, in essence, a *modification* of the rule to allow for such an appeal.

¶ 8     Properly understood, the State's argument does not ask us to interpret the supreme court rules, but rather to exercise our rulemaking authority under the Illinois Constitution. See Ill.

---

[1]The committee comments to the rule state the purpose of the rule more broadly: "Rule 660 was added in 1975 to clarify the procedure in appeals from determinations under the Juvenile Court Act. It provides simply that *appeals from determinations in delinquency proceedings are governed by the rules applicable to appeals in criminal cases*, and all other appeals under the Act are governed by the rules governing appeals in civil cases." (Emphasis added.) However, the actual rule that was adopted specifically applies only to appeals from final judgments.

Const. 1970, art. VI, §§ 4(c), 16. Although the appellate court was bound to follow the rules as written, this court has the constitutional power to modify the rules if it sees fit.

¶ 9 The State's argument asks us to invoke our rulemaking authority to modify the supreme court rules to allow it to appeal an interlocutory order suppressing evidence in a juvenile delinquency case. By contrast, the defendant argues that, if this is what the court wants to do, it should turn the matter over to its rules committee. As both parties concede that the plain language of the rules does not allow for such an appeal, our analysis will not be guided by the principles of statutory construction. Rather, we will simply consider whether the State has made a sufficiently compelling case for us to modify the rules at this time.

¶ 10 As the State notes, this court has previously been willing to read Rules 660 and 604(a)(1) more broadly than their precise language provides. In *Martin*, the State alleged that the minor was delinquent in that he committed the offense of reckless homicide. The State sought to remove the proceeding under section 2-7(3) of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, ¶ 702-7(3)). The trial court denied the removal motion, and the State appealed the interlocutory order. The appellate court dismissed for lack of jurisdiction, but this court reversed and held that the State could appeal the denial of a removal motion. *Martin*, 67 Ill. 2d at 466. This court noted that Rule 604(a)(1) allows the State to appeal in a criminal case when a court order has the substantive effect of dismissing a charge. The effect of denying the State's motion to remove the case to criminal court meant that any future indictment under the criminal code for the charged offense would have to be dismissed. *Id.* at 465. The court noted that it had previously held that a juvenile could not appeal an interlocutory order allowing a removal motion (*People v. Jiles*, 43 Ill. 2d 145 (1969)), but explained that the same considerations did not apply when considering whether the State could appeal the denial of such a motion. A juvenile could always appeal at the end of the case if he was ultimately convicted, whereas the State could not appeal at the end of the case. *Martin*, 67 Ill. 2d at 465-66. While recognizing that an interlocutory appeal by the State would delay the proceedings, this court explained that it was "of the opinion that the trial court's denial of a motion to remove ought not to be totally immunized from review." *Id.* at 466.

¶ 11 In *DeJesus*, proceedings against a juvenile were instituted in criminal court pursuant to the automatic transfer provisions of the Juvenile Court Act. However, the minor was later acquitted of murder, but found guilty of armed robbery. In such a situation, the Act required that sentencing proceedings be held against the minor under the Act rather than under the Code of Corrections. *DeJesus*, 127 Ill. 2d at 488-89. The State moved to permit sentencing under the Code of Corrections, but the trial court dismissed the State's motion. When considering whether this order was appealable, this court broadly stated that, "Pursuant to Supreme Court Rule 660(a) (107 Ill. 2d R. 660(a)), Rule 604(a)(1) also applies in juvenile delinquency proceedings."[2] *Id.* at 495. The court then explained that it found *Martin* on point.

---

[2]On the one hand, this statement could be seen as settling the issue before the court. The problem is that the authority that the court cited for this proposition—*In re Hershberger*, 132 Ill. App. 3d 332 (1985)—actually held the opposite. *Hershberger* held that interlocutory appeals in delinquency cases are limited to those for which there is express provisions in the supreme court rules, and the court explained that "Rule 660 *** refers only to final orders." *Id*. at 334. This court

The court found that implicit in *Martin* was the recognition that the State has an appealable interest in pursuing a criminal prosecution, and the court quoted *Martin* for the proposition that the trial court's action ought not to be totally immunized from review. *Id.* at 495-96. Thus, the court determined that the trial court's order terminated a criminal prosecution prior to final judgment and was therefore appealable. *Id.* at 498.

¶ 12    *Martin* and *DeJesus* were not examples of this court exercising its power to modify the applicable rules because, in those cases, the effect of the trial court's orders was the termination of criminal proceedings against the juvenile. Thus, the appeals were arguably covered by the plain language of the rules. Nevertheless, the State contends that some of the reasoning that the court used in those cases would apply equally to the State's need to take an interlocutory appeal from a suppression order in a criminal case. In both cases, the court was willing to look past the rules' precise language, and, in *Martin* this court relied in part on the fact that the State would not be able to appeal the order at the termination of juvenile proceedings. That is equally true of the granting of a motion to suppress. If the State is not allowed to take an interlocutory appeal, then the court's order is insulated from review. We agree with the State that *Martin* and *DeJesus* are persuasive, but we do not find them dispositive of the question before us.

¶ 13    We do, however, agree with the State's policy arguments. Rule 660(a) became effective on October 1, 1975, and it has remained unchanged since that time. In the meantime, there has been a shift in the way that this state views juvenile delinquency proceedings. In 1998, the General Assembly "radically altered" the Juvenile Court Act to "provide more accountability for the criminal acts of juveniles and, from all appearances, to make the juvenile delinquency adjudicatory process look more criminal in nature." *People v. Taylor*, 221 Ill. 2d 157, 165 (2006). When enacting these amendments, the General Assembly added a policy statement to the Act (705 ILCS 405/5-101 (West 2010)), and this court has explained that this statement "represents a fundamental shift from the singular goal of rehabilitation to include the overriding concerns of protecting the public and holding juvenile offenders accountable for violations of the law." *Taylor*, 221 Ill. 2d at 167. And, even before these reforms were enacted, this court recognized in 1995 that virtually all of the constitutional requirements of a criminal trial have been introduced into juvenile delinquency proceedings. *In re W.C.*, 167 Ill. 2d 307, 320-21 (1995).

¶ 14    There are consequences to making juvenile delinquency proceedings more like criminal proceedings. This court has repeatedly relied on the shift in policy to support providing juveniles with many of the same protections that criminal defendants receive. See, *e.g.*, *In re A.G.*, 195 Ill. 2d 313, 318 (2001) (Rule 604(d) applies in juvenile delinquency proceedings); *In re B.L.S.*, 202 Ill. 2d 510, 518-19 (2002) (habitual juvenile offenders are entitled to receive credit for time spent in custody prior to sentencing). In *In re Samantha V.*, 234 Ill. 2d 359, 374 (2009), this court held that the one-act, one-crime rule applies in juvenile proceedings, explaining that "[j]uveniles are faced with the same potential for prejudice as

might have been misled by *Hershberger*'s block quote of the committee comments to Rule 660, which is broader than the rule itself. *Id*.

adults in the context of future criminal proceedings and thus deserve the same protections."

¶ 15     We now hold that another consequence of this shift in policy is that we recognize that the State has the same interest in appealing a suppression order in a juvenile case that it does in a criminal case. In *People v. Young*, 82 Ill. 2d 234 (1980), this court explained the need for interlocutory appeals by the State:

> "In the absence of interlocutory appeals, the proscriptions of the double jeopardy clauses would preclude reviewing courts from considering legal issues that would otherwise be raised by the State. Errors favoring defendants would pass uncorrected, while those which favored the State would be rectified. To the extent that such errors remained unreviewed and proliferated at the trial court level, the development of the law would be distorted. ***
>
>      *** More importantly and more frequently, however, erroneous exclusionary rulings frustrate the primary purpose of the trial: to ascertain the truth of the charges. Social policies embodied in statutory or constitutional provisions may justify encumbering the fact-ascertaining process, but the exclusion of otherwise probative and admissible evidence based solely upon an incorrect interpretation of those provisions serves neither the policy represented by the provision nor the public's interest in an accurate resolution of the factual questions involved in the litigation. Permitting such decisions to escape review encourages their proliferation and denies trial courts desirable guidance. Allowing interlocutory review ensures proper application of the governing rules and at the same time protects the ability of the trial court to determine the truth of the factual allegations involved." *Id.* at 244-47.

As we noted above, we relied on similar reasoning in expanding the State's right to appeal in juvenile cases in *Martin* and *DeJesus*. And, in light of the shift in policy in juvenile delinquency cases, we believe that these concerns apply equally in juvenile cases. As we noted in *In re Lakisha M.*, 227 Ill. 2d 259, 275 (2008), "[w]hile it may be true that juveniles, because of their lack of maturity, often act impetuously and may be more easily influenced by others, that does not negate the fact that juvenile crime is a serious concern of the state." Thus, we agree with the State that Rule 604(a)(1) should apply in juvenile delinquency proceedings. Just as this court modified Rule 303(a) in *Harrisburg-Raleigh Airport Authority v. Department of Revenue*, 126 Ill. 2d 326 (1989), in light of the modern policy of permitting filing by mail, we now modify Rule 660(a) to incorporate Rule 604(a)(1) in light of the shift in policy exhibited by the Juvenile Justice Reform Amendments of 1998.

¶ 16     We note that the Supreme Court of New Mexico reached the same conclusion when considering a similarly worded provision. In *State v. Jade G.*, 154 P.3d 659 (N.M. 2007), the New Mexico Supreme Court considered whether the State should be allowed to appeal a suppression order in a juvenile delinquency proceeding under a statute that read as follows:

> "In any criminal proceeding in district court an appeal may be taken by the state to the supreme court or court of appeals, as appellate jurisdiction may be vested by law in these courts:
>          ***
>          (2) within ten days from a decision or order of a district court suppressing or

-6-

excluding evidence or requiring the return of seized property, if the district attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." N.M. Stat. Ann. § 39-3-3(B)(2) (1972).

The court held that this statute allowed the State to take an interlocutory appeal from a suppression order in a juvenile delinquency proceeding, reasoning as follows:

> "The State has the same need for an automatic interlocutory appeal of the suppression of evidence in delinquency proceedings as it does in criminal proceedings because, in many cases, whether or not evidence is suppressed will determine if the State can go forward with its case. Because juvenile delinquency proceedings are sufficiently similar to criminal proceedings, we hold that Section 39-3-3(B)(2) governs in the circumstances of interlocutory appeals of suppression orders from a children's court." *Jade G.*, 154 P.3d at 664.

The shift in policy of the Juvenile Court Act makes such reasoning equally applicable here.

¶ 17    We also do not agree with defendant's suggestion that we should turn the question over to the rules committee. Illinois Supreme Court Rule 3 (eff. Mar. 22, 2010), when setting forth the procedures for adopting and amending rules specifically provides that, "The Supreme Court reserves the prerogative of departing from the procedures of this rule." Ill. S. Ct. R. 3(a)(2). We believe that the State has presented a sufficiently compelling case that it has the same need for appeal of suppression orders in juvenile cases as in criminal cases that we do not need to defer the matter to the rules committee.

¶ 18    The minor has argued that the delays caused by interlocutory appeals are a bigger concern in juvenile cases than in criminal cases and contends that delays caused by interlocutory appeals could undermine the rehabilitation of minors. This is undoubtedly a significant concern, but, in light of the shift in policy of the Juvenile Court Act, we do not believe that it outweighs the State's interest in being able to appeal a suppression order. However, similar concerns have led the court to adopt Illinois Supreme Court Rule 660A (eff. May 1, 2013), which sets forth expedited procedures for appeals in juvenile delinquency proceedings. We thus hold today that, when the State takes an interlocutory appeal from a suppression order in a juvenile delinquency proceeding, the matter should be expedited pursuant to Rule 660A.

¶ 19                                     CONCLUSION

¶ 20    We hold that Supreme Court Rule 660(a) should be modified to allow the State to appeal an interlocutory order suppressing evidence in a juvenile delinquency proceeding. Accordingly, the appellate court has jurisdiction to hear the State's appeal, and we remand the matter for the appellate court to consider the merits of the State's appeal.

¶ 21    Reversed and remanded.

¶ 22    JUSTICE THEIS, dissenting:

¶ 23    This case involves the State's attempt to take an interlocutory appeal from an order

suppressing evidence in a delinquent minor proceeding. The appellate court held that under the rules which govern appeals in juvenile cases (Rules 660(a) and 662) appeal is not permitted (2012 IL App (3d) 100921, ¶¶ 8-11), and declined to address the merits of the suppression order for lack of jurisdiction (*id.* ¶ 12). The majority reverses and remands, holding that the portion of Rule 604(a)(1), which permits the State to appeal an order suppressing evidence in a criminal case, is now incorporated into Rule 660(a), which governs appeals from final judgments in delinquent minor proceedings. *Supra* ¶¶ 15, 20. The majority thus allows the State's interlocutory appeal to proceed. *Supra* ¶ 20. Respectfully, I disagree.

¶ 24                                                                I

¶ 25        Rule 315(c)(3) requires a party to include in its petition for leave to appeal "a statement of the points relied upon in asking the Supreme Court to review the judgment of the Appellate Court." Ill. S. Ct. R. 315(c)(3) (eff. Feb. 26, 2010). In the instant case, the State maintained in its petition for leave to appeal that "[t]he Appellate Court incorrectly determined that Supreme Court Rule 604(a)(1) does not apply in a delinquent minor proceeding." Specifically, the State argued that the appellate court's construction of our rules produced an absurd and unjust result. In its initial brief before this court, the State again argued that whether the State may appeal from an interlocutory order suppressing evidence in a delinquent minor proceeding "is a question that requires the interpretation of Supreme Court Rules 604(a)(1) and 660." In its reply brief, however, the State took respondent to task for addressing this issue, stating that "it is apparent" that Rule 604(a)(1) "does not, by its terms, apply to permit interlocutory appeals in juvenile proceedings." The State thus conceded not only that the appellate court got it right, but that the very reason set forth in its petition for allowing appeal before this court does not exist.

¶ 26        To be sure, the State also argued, in its opening brief, that public policy favors "according" the State the right to take an interlocutory appeal from a suppression motion in a delinquent minor proceeding. In other words, the State argued that our rules should be changed to accommodate its interlocutory appeal. But that issue was not raised in the State's petition for leave to appeal. "Issues that a party fails to raise in its petition for leave to appeal, even if raised in the party's appellant's brief, are not properly before the court and are forfeited." *People v. Fitzpatrick*, 2013 IL 113449, ¶ 26. As respondent properly argued: "The only issue presented in this case is whether, under the existing rules of this Court, the State has the ability to bring an interlocutory appeal of a suppression order in a juvenile case." The State conceded that it does not.

¶ 27        The majority recognizes the State's concession (*supra* ¶ 7), but attaches no legal significance to it. Instead, the majority decides that it "will not be guided by the principles of statutory construction" that apply to our rules; it "will simply consider whether the State has made a sufficiently compelling case for us to modify the rules at this time." *Supra* ¶ 9. I disagree with this approach for two reasons: (1) it gives tacit approval to the State's failure, as discussed above, to follow faithfully Rule 315 in identifying the issue raised in this appeal; and (2) as discussed below, it sidesteps, without adequate justification, the more comprehensive rulemaking procedures adopted by this court. See Ill. S. Ct. R. 3 (eff. Mar.

22, 2010).

¶ 28                                                    II

¶ 29        Rule 3 expressly states that this court's rulemaking procedures were adopted

> "to provide for the orderly and timely review of proposed rules and proposed amendments to existing rules of the Supreme Court; to provide an opportunity for comments and suggestions by the public, the bench, and the bar; [and] to aid the Supreme Court in discharging its rulemaking responsibilities; ***." Ill. S. Ct. R. 3(a)(1).

¶ 30        The participation of the supreme court rules committee figures prominently in the process. The committee, comprised of members of the bench and bar from throughout Illinois, is tasked with periodically reviewing rules in areas where no other committee would do so "to ensure that such rules facilitate the administration of justice." Ill. S. Ct. R. 3(b)(2). Importantly, the committee is also responsible for the conduct of public hearings where a proposed rule or rule amendment is recommended for adoption by this court. Ill. S. Ct. R. 3(b)(3), (d)(1), (2), (3). The inclusion of a mechanism for public comment on a proposed rule or rule amendment is designed so that different voices may be heard. A proposed rule or rule amendment may appear eminently reasonable on paper, but only after vetting by a wider audience do other considerations come to light which will impact the proposal under review.

¶ 31        Recently adopted Rule 660A (Ill. S. Ct. R. 660A (eff. May 1, 2013)), which sets forth the procedure for expedited appeals in delinquent minor cases (and which the majority here also modifies (*supra* ¶ 18)), was the product of the committee and public hearing process set forth in Rule 3. Although the need for prompt appellate review of delinquent minor cases seems self-evident, we did not simply take the matter from the committee and adopt the rule as proposed by the Illinois State Bar Association. We allowed the process to proceed, permitting various juvenile justice agencies and other stakeholders, such as the Cook County public guardian and the State Appellate Defender, to provide written comments and testimony on the proposal that ultimately aided this court in its decision to adopt Rule 660A. In the present case, we should similarly allow the committee to do its job and permit a wider audience to weigh in on the consequences of according the State a new right of appeal in delinquent minor proceedings.

¶ 32        The majority's treatment of the policy arguments in this case illustrates precisely why this matter should be referred to the rules committee. In line with the State's arguments, the majority focuses on the 1998 amendments to the Juvenile Court Act and the shift in the way this state views juvenile delinquency proceedings. The majority identifies two consequences of treating juvenile delinquency proceedings more like criminal proceedings: (1) this court has relied on this shift to support providing juveniles with many of the same protections as criminal defendants receive; and (2) this court should rely on this shift to recognize that the State has "the same interest in appealing a suppression order in a juvenile case that it does in a criminal case." *Supra* ¶¶ 14-15. Whether the State should be accorded a new right of appeal in delinquent minor proceedings is an issue separate and distinct from whether a minor should enjoy rights that criminal defendants do. That the latter may be a

"consequence" of sorts of the evolution of delinquent minor proceedings does not warrant, without more, the additional consequence the majority would effect in this case. Further, although this court has recognized, as the majority notes, that the 1998 amendments to the Juvenile Court Act " 'radically altered' " that statute to " 'provide more accountability for the criminal acts of juveniles' " (*supra* ¶ 13 (quoting *People v. Taylor*, 221 Ill. 2d 157, 165 (2006))), "[t]his court also has consistently rejected the argument that the amendments rendered the Act punitive and equivalent to a criminal prosecution." *In re Jonathon C.B.*, 2011 IL 107750, ¶ 91. Significant differences still exist between juvenile court proceedings and criminal prosecutions, as evinced by the legislature's purpose and policy statement that informs the entire Juvenile Court Act (705 ILCS 405/1-2 (West 2010)), and the purpose and policy statement specifically addressing itself to delinquent minors (705 ILCS 405/5-101 (West 2010)). Thus, any similarities between the two proceedings do not necessarily justify recognizing a new appeal right in this case. Moreover, I would not so quickly dismiss respondent's argument that the delay occasioned by permitting interlocutory appeal of suppression orders in delinquent minor proceedings could undermine the rehabilitation of minors. Although the majority states that "[t]his is undoubtedly a significant concern," the majority concludes, with virtually no discussion, that the State's interest in being able to appeal a suppression order outweighs any such concern. *Supra* ¶ 18. Rehabilitation, however, still remains an important purpose of our juvenile justice system. See 705 ILCS 405/5-101(1)(c) (West 2010).

¶ 33    The point of these observations is that the issue requires further examination and should not be decided in the context of this case. The juvenile justice system, and the thousands of minors that are marshaled through that system every year, would be better served by this court broadening its perspective and considering the propriety of a rule change after the stakeholders—minors and their families, the community, the State, the bench, and the bar—have had an opportunity to consider and comment on the desirability and consequences of a rule change.

¶ 34    I recognize, as the majority does, that this court has reserved the prerogative of departing from the committee and public hearing procedures set forth in Rule 3 (Ill. S. Ct. R. 3(a)(2)) and may utilize a case before it as a vehicle to adopt a rule change. But this court has exercised that procedure only sparingly. The lone case cited by the majority, *Harrisburg-Raleigh Airport Authority v. Department of Revenue*, 126 Ill. 2d 326 (1989), provides scant precedent for departing from the committee and public hearing process here.

¶ 35    In *Harrisburg-Raleigh*, this court determined when a notice of appeal should be deemed "filed with the clerk of the circuit court," pursuant to Rule 303(a), when the notice is mailed. *Harrisburg-Raleigh*, 126 Ill. 2d at 339. We read, *i.e.*, construed, the language of the rule in light of modern policies and practices, and simply confirmed what prior supervisory orders had foreshadowed. *Id.* at 339-40. In contrast, the issue the majority addresses here does not involve how existing language in our rules should be read. No existing language in our rules provides for the interlocutory appeal the State seeks. Further, *Harrisburg-Raleigh* simply clarified a filing deadline. Here, the State is requesting that we accord it an entirely new right to appeal. That decision should be made only after considering and weighing the competing interests at stake and providing "an opportunity for comments and suggestions by the public,

the bench, and the bar." Ill. S. Ct. R. 3(a)(1).

¶ 36       For all these reasons, I dissent.