In the Matter of the WELFARE
OF C.T.L., Juvenile.

No. A06–874.

Court of Appeals of Minnesota.

Oct. 10, 2006.

Mike Hatch, Attorney General, St. Paul, MN, and Douglas H. Johnson, Washington County Attorney, Mary M. Pieper, Assistant County Attorney, Stillwater, MN, for appellant.

John M. Stuart, State Public Defender, Lawrence Hammerling, Deputy Assistant Public Defender, Minneapolis, MN, and Megan H. Schlueter, Assistant Washington County Public Defender, Stillwater, MN, for respondent.

Considered and decided by RANDALL, Presiding Judge; KALITOWSKI, Judge; and PETERSON, Judge.

## O P I N I O N

PETERSON, Judge.

A delinquency petition was filed alleging that respondent aided and abetted first-degree aggravated robbery and committed fifth-degree assault. Appellant moved for an order requiring respondent to provide a biological specimen for the purpose of DNA analysis pursuant to Minn.Stat. § 299C.105 (Supp.2005). Respondent challenged the constitutionality of Minn.Stat. § 299C.105 and moved for an order certifying the issue of the statute's constitutionality to this court as an important and doubtful question. The district court held that the statute's "compulsory DNA profiling of criminal defendants prior to conviction" is unconstitutional and certified as important and doubtful the question of whether the provisions of Minn.Stat. § 299C.105 that require charged defendants to provide a DNA sample upon a judicial finding of probable cause, but before any conviction on the charged offense, is an unconstitutional search in violation of the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution. We answer the certified question in the affirmative.

## FACTS

Respondent C.T.L., a juvenile, was charged with one count each of fifth-degree assault, in violation of Minn.Stat. § 609.224, subd. 1(1)(2) (2004), and aiding and abetting first-degree aggravated robbery, in violation of Minn.Stat. § 609.245, subd. 1 (2004). Appellant State of Minnesota moved for an order requiring C.T.L. to report to the sheriff's office immediately after his initial appearance in district court to provide a biological specimen for the purpose of DNA analysis pursuant to Minn.Stat. § 299C.105 (Supp. 2005). Respondent then moved for an order finding that the provisions of Minn.Stat. § 299C.105 that require law-enforcement personnel to obtain biological samples from certain defendants before any finding of guilt violate the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution. Respondent also moved for an order certifying the issue of the statute's constitutionality to this court as an important or doubtful question.

Following a hearing, the district court issued an order holding unconstitutional the statute's "compulsory DNA profiling of criminal defendants prior to conviction" and certifying the issue to this court as important and doubtful because of its "broad and far reaching implications for all defendants charged with crimes in the state of Minnesota."

## ISSUE

Do the portions of Minn.Stat. § 299C.105, subd. 1(a)(1) and (3) (Supp. 2005), that direct law-enforcement personnel to take a biological specimen from a person who has been charged with an offense, but not convicted, violate the Fourth Amendment to the United States Constitu-

tion and Article I, Section 10, of the Minnesota Constitution?

## ANALYSIS

▮▮▮ "This court accepts certification of questions regarding criminal statutes as important and doubtful when the challenged statute has statewide application and the question has not previously been decided." *State v. Mireles,* 619 N.W.2d 558, 561 (Minn.App.2000), *review denied* (Minn. Feb. 15, 2001). Whether Minn. Stat. § 299C.105 (Supp.2005) directs law-enforcement personnel to conduct unconstitutional searches in violation of the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution[1] has not been addressed by Minnesota appellate courts, and an answer to this question will have statewide application. Therefore, the district court properly certified the question.

▮▮▮ The constitutionality of a statute is a question of law, which this court reviews de novo. *State v. Wright,* 588 N.W.2d 166, 168 (Minn.App.1998), *review denied* (Minn. Feb. 24, 1999). Minnesota statutes are presumed to be constitutional, and a court's power to declare a statute unconstitutional "should be exercised with extreme caution and only when absolutely necessary." *State v. Machholz,* 574 N.W.2d 415, 419 (Minn.1998) (quoting *In re Haggerty,* 448 N.W.2d 363, 364 (Minn. 1989)). A party challenging a statute has the burden of demonstrating beyond a reasonable doubt that the statute is unconstitutional. *Id.* (quotation omitted).

The statute that C.T.L. challenges directs law-enforcement personnel to take a biological specimen from C.T.L. for the purpose of DNA analysis. The statute states:

> Sheriffs, peace officers, and community corrections agencies operating secure juvenile detention facilities shall take or cause to be taken biological specimens for the purpose of DNA analysis as defined in section 299C.155, of the following:
>
> . . . .
>
> (3) juveniles who have appeared in court and have had a judicial probable cause determination on a charge of committing . . .
>
> (iv) robbery under section 609.24 or aggravated robbery under section 609.245[.]

Minn.Stat. § 299C.105, subd. 1(a)(3)(iv).

Minn.Stat. § 299C.155, subd. 1 (Supp. 2005), defines "DNA analysis" as "the process through which deoxyribonucleic acid (DNA) in a human biological specimen is analyzed and compared with DNA from another human biological specimen for identification purposes." The Bureau of Criminal Apprehension (BCA) is required to "adopt uniform procedures and protocols to maintain, preserve, and analyze human biological specimens for DNA" and "establish a centralized system to cross-reference data obtained from DNA analysis." Minn.Stat. § 299C.155, subd. 3 (Supp. 2005). The BCA is also required to "perform DNA analysis and make data obtained available to law enforcement officials in connection with criminal investiga-

---

1. The Fourth Amendment to the United States Constitution states:

    The right of the people to be secure in their person, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

    Although there are minor differences in language and punctuation, Article I, Section 10 of the Minnesota Constitution is substantively the same as the Fourth Amendment.

tions in which human biological specimens have been recovered." Minn.Stat. § 299C.155, subd. 4 (Supp. 2005). Biological specimens taken under Minn.Stat. § 299C.105, subd. 1(a), must be forwarded to the BCA within 72 hours. Minn.Stat. § 299C.105, subd. 1(b).

In addition to the provision that applies to C.T.L., Minn.Stat. § 299C.105, subd. 1(a), directs law-enforcement personnel to take biological specimens from (1) juveniles who have had a probable-cause determination on a charge of any one of several enumerated offenses or who have been adjudicated delinquent for committing, or attempting to commit, any of the offenses; Minn.Stat. § 299C.105, subd. 1(a)(3); (2) persons who have had a judicial probable-cause determination on a charge of committing, or have been convicted of committing or attempting to commit, any of several enumerated offenses; Minn.Stat. § 299C.105, subd. 1(a)(1); and (3) persons sentenced as patterned sex offenders under Minn.Stat. § 609.108; Minn.Stat. § 299C.105, subd. 1(a)(2).

The certified question before us involves only the portions of Minn.Stat. § 299C.105, subd. 1(a)(1) and (3) that direct law-enforcement personnel to take biological specimens from juveniles and adults who have had a probable-cause determination on a charged offense but who have not been convicted. If one of these people is later found not guilty, the BCA is required to destroy the biological specimen taken from the person who is found not guilty and to return all records to the person. Minn. Stat. § 299C.105, subd. 3(a). If the charge against one of these people is later dismissed, the BCA is required to destroy the biological specimen and return all records to the person upon the request of the person who submitted a biological specimen. *Id.* If the BCA destroys a person's biological specimen under either of these

circumstances, the BCA is also required to "remove the person's information from the [BCA's] combined DNA index system and return all related records and all copies or duplicates of them." Minn.Stat. § 299C.105, subd. 3(b).

■ The state does not dispute that taking and analyzing biological specimens as required under the statute is a search under the Fourth Amendment. *See Skinner v. Ry. Labor Executives' Ass'n,* 489 U.S. 602, 618, 109 S.Ct. 1402, 1413, 103 L.Ed.2d 639 (1989) ("the collection and subsequent analysis of the requisite biological samples must be deemed Fourth Amendment searches"). The Fourth Amendment and Article I, section 10, of the Minnesota Constitution prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. "[T]he most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)).

In *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court explained the role of the Fourth Amendment when the state directs that a biological specimen be taken from a person and analyzed. *Schmerber* involved a defendant who was arrested at a hospital while receiving treatment for injuries that he had suffered when the automobile that he apparently had been driving was involved in an accident. *Id.* at 758, 86 S.Ct. at 1829. A police officer directed that a blood sample be drawn from the defendant by a

physician at the hospital, and a chemical analysis of the sample indicated intoxication. *Id.* at 758–59, 86 S.Ct. at 1829. At the defendant's trial for driving an automobile while under the influence of intoxicating liquor, the report of the chemical analysis was admitted into evidence over the defendant's objection that the blood had been drawn without his consent. *Id.* at 759, 86 S.Ct. at 1829. The defendant contended that in that circumstance, the withdrawal of the blood and the admission of the report denied him his right not to be subjected to unreasonable searches and seizures in violation of the Fourth Amendment. *Id.*

In considering whether administering the blood test violated the Fourth Amendment, the Supreme Court explained that

> the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner. In other words, the questions we must decide in this case are whether the police were justified in requiring [the defendant] to submit to the blood test, and whether the means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness.[2]

*Id.* at 768, 86 S.Ct. at 1834.

The Supreme Court acknowledged that there was plainly probable cause for the officer to arrest the defendant and charge him with driving an automobile under the influence of alcohol. *Id.* But the court determined that the considerations that ordinarily permit a search of a defendant incident to an arrest

have little applicability with respect to searches involving intrusions beyond the body's surface. The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained. In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search.

Although the facts which established probable cause to arrest in this case also suggested the required relevance and likely success of a test of [the defendant's] blood for alcohol, the question remains whether the arresting officer was permitted to draw these inferences himself, or was required instead to procure a warrant before proceeding with the test. Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned. The requirement that a warrant be obtained is a requirement that inferences to support the search "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great.

*Id.* at 769–70, 86 S.Ct. at 1835 (quoting *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948) (citation omitted)).

---

2. C.T.L. does not claim that the means and procedures for taking a biological specimen from him do not respect relevant Fourth Amendment standards of reasonableness.

The only question before us is whether the statute may require that biological specimens be taken from individuals who have been charged with an offense, but not convicted.

The Supreme Court then recognized that the officer who directed the physician to draw the defendant's blood might reasonably have believed that the delay necessary to obtain a warrant threatened the destruction of the evidence because the amount of alcohol in the blood begins to diminish shortly after drinking stops. *Id.* at 770, 86 S.Ct. at 1835. Given the fact that the evidence could disappear during the time that it would take to seek out a magistrate and obtain a search warrant, the Supreme Court held that the officer's attempt to secure evidence of blood-alcohol content was an appropriate incident to the defendant's arrest. *Id.* at 771, 86 S.Ct. at 1836.

The significant principle to be drawn from *Schmerber* with respect to Minn.Stat. § 299C.105, subd. 1(a), is that establishing probable cause to arrest a person is not, by itself, sufficient to permit a biological specimen to be taken from the person without first obtaining a search warrant. In *Schmerber*, the facts that established probable cause to arrest the defendant were the smell of liquor on his breath, and the blood-shot, watery, and glassy appearance of his eyes. *Id.* at 769, 86 S.Ct. at 1835. These symptoms of drunkenness also suggested that there was alcohol in the defendant's blood. But, by itself, the strong inference that there was alcohol in the defendant's blood was not enough to permit the police officer to direct the physician to draw the defendant's blood. It was only because evidence of alcohol in the defendant's blood could disappear during the time it would take to obtain a search warrant that the Supreme Court permitted the search without a warrant. Otherwise, a search warrant was required, and the inferences to support the warrant needed to be drawn by a neutral and detached magistrate, instead of the police officer.

The state acknowledges that the Fourth Amendment requires a showing of probable cause in order for a search warrant to be issued. But it argues that Minn.Stat. § 299C.105, subd. 1(a), satisfies this requirement because, under the statute, a biological specimen will not be taken until a court makes a probable-cause determination. What this argument fails to recognize, however, is that probable cause to support a criminal charge is not the same thing as probable cause to issue a search warrant.

Probable cause to support a criminal charge exists when " 'the evidence worthy of consideration * * * brings the charge against the prisoner within reasonable probability.' " *State v. Koenig,* 666 N.W.2d 366, 372 (Minn.2003) (quoting *State v. Florence,* 306 Minn. 442, 446, 239 N.W.2d 892, 896 (1976)). Probable cause to issue a search warrant exists when, given the totality of the circumstances, there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Zanter,* 535 N.W.2d 624, 633 (Minn.1995) (quotation omitted).

Minn.Stat. § 299C.105, subd. 1(a)(1) and (3), use a judicial determination of probable cause to support a criminal charge as a substitute for a judicial determination of probable cause to issue a search warrant. But, just as in *Schmerber,* where the existence of probable cause to arrest the defendant was not sufficient to permit an intrusion into his body without a warrant, a determination of probable cause to support a criminal charge, even if it is made by a judge, is not sufficient to permit a biological specimen to be taken from the person charged without a warrant. The fact that a judge has determined that the evidence in a case brings a charge against the defendant within reasonable probability does not mean that the judge has also

determined that there is a fair probability that contraband or evidence of a crime will be found in a biological specimen taken from the defendant.

By directing that biological specimens be taken from individuals who have been charged with certain offenses solely because there has been a judicial determination of probable cause to support a criminal charge, Minn.Stat. § 299C.105, subd. 1(a)(1) and (3), dispense with the requirement under the Fourth Amendment that before conducting a search, law-enforcement personnel must obtain a warrant based on a neutral and detached magistrate's determination that there is a fair probability that the search will produce contraband or evidence of a crime. Under the statute, it is not necessary for anyone to even consider whether the biological specimen to be taken is related in any way to the charged crime or to any other criminal activity.

■ Citing federal court opinions that conclude that requiring a defendant to submit to DNA sampling does not violate the defendant's Fourth Amendment right against unreasonable searches and seizures, the state argues that this court should examine the reasonableness of Minn.Stat. § 299C.105 under a general balancing test that weighs a defendant's right to privacy against the state's interest in collecting and storing DNA samples. But all of the opinions that the state cites involve statutes that require specimens for DNA testing to be taken only from individuals who have been convicted of a criminal offense, and when weighing the individual's right to privacy against the state's interest in DNA testing, the opinions recognize that an individual who has been convicted of an offense has a reduced expectation of privacy and conclude that this reduced expectation of privacy does not outweigh the state's interest in DNA testing. *Kruger v. Erickson,* 875 F.Supp. 583 (D.Minn.1995), *aff'd on other grounds,* 77 F.3d 1071 (8th Cir.1996); *Johnson v. Quander,* 370 F.Supp.2d 79 (D.D.C.2005), *aff'd,* 440 F.3d 489 (D.C.Cir.2006); *Padgett v. Ferrero,* 294 F.Supp.2d 1338 (N.D.Ga. 2003), *aff'd sub nom., Padgett v. Donald,* 401 F.3d 1273 (11th Cir.2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 352, 163 L.Ed.2d 61 (2005); *United States v. Sczubelek,* 255 F.Supp.2d 315 (D.Del.2003), *aff'd,* 402 F.3d 175 (3rd Cir.2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 2930, —— L.Ed.2d —— (2006).

The question certified by the district court involves only biological specimens to be taken from individuals who have been charged with a criminal offense but who have not been convicted. Therefore, the reduced expectation of privacy that was present in the cases the state cites is not present here.

Furthermore, Minn.Stat. § 299C.105, subd. 3, requires the BCA to destroy a biological specimen and remove information about the specimen from the combined DNA index system when the person from whom the specimen was taken is found not guilty or the charge against the person is dismissed. This requirement suggests that the legislature has determined that the state's interest in collecting and storing DNA samples is outweighed by the privacy interest of a person who has not been convicted. Consequently, unless the privacy expectation of a person who has been charged and is awaiting the disposition of the charge is different from the privacy expectation of a person who was charged but the charge was dismissed or the person was found not guilty, we see no basis for concluding that the state's interest in taking a biological specimen from a person solely because the person has been charged outweighs the person's right to privacy. And because a person who has

been charged is presumed innocent until proved guilty, we see no basis for concluding that before being convicted, a charged person's privacy expectation is different from the privacy expectation of a person who was charged but the charge was dismissed or the person was found not guilty. Therefore, we conclude that the privacy interest of a person who has been charged but has not been convicted is not outweighed by the state's interest in collecting and analyzing a DNA sample.

## DECISION

Because Minn.Stat. § 299C.105, subd. 1(a)(1) and (3) (Supp. 2005), direct law-enforcement personnel to conduct searches without first obtaining a search warrant based on a neutral and detached magistrate's determination that there is a fair probability that the search will produce contraband or evidence of a crime, and because the privacy interest of a person who has been charged with a criminal offense, but who has not been convicted, is not outweighed by the state's interest in taking a biological specimen from the person for the purpose of DNA analysis, the portions of Minn.Stat. § 299C.105, subd. 1(a)(1) and (3), that direct law-enforcement personnel to take a biological specimen from a person who has been charged but not convicted violate the Fourth Amendment to the United States Constitution and Article I, Section 10 of the Minnesota Constitution.

**Certified question answered in the affirmative.**