**In the Matter of the WELFARE OF M.L.M.**

**No. A09–875.**

Court of Appeals of Minnesota.

April 20, 2010.

Lori Swanson, Attorney General, St. Paul, MN, and Michael O. Freeman, Hennepin County Attorney, Michael Richard-

son, Assistant County Attorney, Minneapolis, MN, for respondent State of Minnesota.

William M. Ward, Hennepin County Public Defender, Paul J. Maravigli, Assistant Public Defender, Minneapolis, MN, for appellant M.L.M.

Considered and decided by WRIGHT, Presiding Judge; WORKE, Judge; and LARKIN, Judge.

## OPINION

WRIGHT, Judge.

Appellant challenges the district court's order requiring her to submit a DNA sample for identification purposes pursuant to Minn.Stat. § 609.117, subd. 1(2). Appellant argues that the statute, as applied to a juvenile who has not been adjudicated delinquent for a felony, (1) violates the right to be free from unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution and (2) denies her equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 2, of the Minnesota Constitution. For the reasons set forth below, we affirm.

## FACTS

Fifteen-year-old appellant M.L.M. and a friend stole clothing valued at more than $500 from a department store. In the process, they damaged the clothing by using scissors to remove security sensors and ran from police officers before being apprehended. M.L.M. was charged with aiding and abetting felony possession of theft tools, a violation of Minn.Stat. §§ 609.05, 609.59 (2008); aiding and abetting gross-misdemeanor theft of property valued at more than $500, a violation of Minn.Stat. §§ 609.05, 609.52, subds. 2(1), 3(4) (2008); aiding and abetting third-degree damage to property, a violation of Minn.Stat. §§ 609.05, 609.595, subd. 2(a) (2008); and misdemeanor fleeing a police officer by means other than a motor vehicle, a violation of Minn.Stat. § 609.487, subd. 6 (2008).

M.L.M. admitted committing gross-misdemeanor theft of property valued at more than $500 and minor consumption, for which she had been cited related to a party at her parents' home. Following the adjudication of delinquency, the district court placed M.L.M. on probation and ordered her to submit a DNA sample as required by statute. M.L.M. moved to declare Minn.Stat. § 609.117, subd. 1(1) (2008), unconstitutional and to stay the DNA-collection order pending appeal. The district court stayed the DNA collection for one month. The motion was amended approximately one month later to change the statutory citation to Minn.Stat. § 609.117, subd. 1(2), which addresses DNA collection following certain juvenile-delinquency adjudications. The district court denied M.L.M.'s motions to declare the statute unconstitutional and to extend the stay of the original order. This appeal followed.[1]

## ISSUES

I. Does application of Minn.Stat. § 609.117, subd. 1(2), to a misdemeanor adjudication arising from the same set of circumstances for which a felony offense was charged violate the right to be free from unreasonable searches and seizures

---

1. In a special-term order, we accepted jurisdiction, concluding that the district court's order denying M.L.M.'s motion and declining to extend the stay of the DNA-collection order was an appealable final order. *In re Welfare of M.L.M.*, No. A09–875 (Minn.App. June 23, 2009) (order).

guaranteed by the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution?

II. Does application of Minn.Stat. § 609.117, subd. 1(2), to a misdemeanor adjudication arising from the same set of circumstances for which a felony offense was charged deny the equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 2, of the Minnesota Constitution?

## ANALYSIS

■ The constitutionality of a statute presents a question of law, which we review de novo. *State v. Melde,* 725 N.W.2d 99, 102 (Minn.2006). In doing so, we presume that Minnesota statutes are constitutional and will strike down a statute as unconstitutional only if absolutely necessary. *Id.* To prevail, the party challenging the constitutionality of a statute must demonstrate beyond a reasonable doubt that the statute violates a constitutional provision. *Miller Brewing Co. v. State,* 284 N.W.2d 353, 356 (Minn.1979).

The district court shall order an offender to submit a DNA sample for identification purposes when the district court "adjudicates a person a delinquent child who is petitioned for committing or attempting to commit a felony offense and is adjudicated delinquent for that offense or any offense arising out of the same set of circumstances." Minn.Stat. § 609.117, subd. 1(2).

## I.

■ M.L.M. argues that application of Minn.Stat. § 609.117, subd. 1(2), to misdemeanor adjudications authorizes a warrantless, suspicionless taking of DNA in violation of the Fourth Amendment to the United States Constitution and Article I,

Section 10, of the Minnesota Constitution. Ordinarily, we analyze federal and state protections guaranteed by the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution as co-extensive. *See State v. Carter,* 596 N.W.2d 654, 657 (Minn.1999) (interpreting protections under these provisions as co-extensive in the absence of " 'radical' or 'sharp' departures" of the United States Supreme Court from its precedent); *see also Kahn v. Griffin,* 701 N.W.2d 815, 828 (Minn.2005) (recognizing general principle favoring uniformity with the federal constitution). There is not a basis for deviating from that general principle here.

■ The guiding principle of our analysis under the Fourth Amendment is "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Pennsylvania v. Mimms,* 434 U.S. 106, 108–09, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977) (quotation omitted). As a general rule, the reasonableness of a search depends on governmental compliance with the Warrant Clause, which requires authorities to demonstrate probable cause. *United States v. U.S. Dist. Court,* 407 U.S. 297, 315–16, 92 S.Ct. 2125, 2135–36, 32 L.Ed.2d 752 (1972). But "the general rule of the Warrant Clause is not unyielding." *State v. Bartylla,* 755 N.W.2d 8, 15 (Minn.2008) (quotation omitted).

Applying a totality-of-the-circumstances test to analyze the constitutionality of Minn.Stat. § 609.117, subd. 1(1), as applied to an adult convicted of a felony offense, the Minnesota Supreme Court concluded that "a warrantless, suspicionless collection of a convict's DNA pursuant to Minn.Stat. § 609.117 does not violate the Fourth Amendment." *Id.* at 17. In doing so, the *Bartylla* court balanced the state's interests against the intrusion into the citizen's

personal security. *Id.* at 17–18. And we recently held that "Minn.Stat. § 609.117, subd. 1(1), as applied to an individual convicted of a misdemeanor offense arising from the same set of circumstances as a charged felony offense, does not authorize an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution or Article I, Section 10, of the Minnesota Constitution." *State v. Johnson,* 777 N.W.2d 767, 772 (Minn.App.2010), *pet. for review filed* (Minn. Feb. 25, 2010).

M.L.M. maintains that only a juvenile adjudication of a felony or predatory offense justifies a warrantless, suspicionless collection of DNA for identification purposes. In support of this argument, M.L.M. advances the following arguments: (1) the Minnesota Supreme Court's decision in *Bartylla* was dependent on a felon's diminished expectation of privacy, and by excluding nonfelons from its analysis, the *Bartylla* court implicitly recognized that gross misdemeanants do not have the same reduced privacy interests; (2) foreign-jurisdiction caselaw consistently limits DNA collection to felons and predatory offenders; and (3) this court "specifically prohibited the warrantless, suspicionless taking of DNA for charged but unproven felonies" in *In re Welfare of C.T.L.,* 722 N.W.2d 484 (Minn.App.2006). We will address each argument in turn.

First, the *Bartylla* court addressed Minn.Stat. § 609.117, subd. 1(1), as applied to adults convicted of a felony and expressly declined to address application of Minn. Stat. § 609.117 to nonfelony offenses because that issue was not presented to the court. 755 N.W.2d at 12 n. 2. Because the supreme court intentionally excluded misdemeanor convictions from its analysis, M.L.M.'s argument that *Bartylla* stands for the proposition that juveniles adjudicated delinquent for a misdemeanor must be excluded from the DNA-collection statute is unavailing. We also find unpersuasive M.L.M.'s contention that the *Bartylla* court's opinion reflects a disavowal of DNA collection for the commission of less-serious offenses because it cites decisions from foreign jurisdictions that permit DNA collection only from felons and other serious offenders. The *Bartylla* court analyzed the case before it—a challenge to the constitutionality of Minn.Stat. § 609.117 as applied to those convicted of a felony; its citation to cases that similarly addressed the application of DNA-collection statutes to felons does not suggest that the Minnesota DNA-collection statute is unconstitutional as applied to juvenile misdemeanants. Rather, it reflects the careful development of jurisprudence that refrains from rendering an advisory opinion on a related, but unpresented, matter.

Regarding foreign legal authority, contrary to M.L.M.'s argument, foreign jurisdictions have not uniformly concluded that DNA collection is justified only for convicted felons and predatory offenders. *See Johnson,* 777 N.W.2d at 771. Rather, foreign jurisdictions are not unified in their treatment of DNA-collection statutes. *Id.; see, e.g., United States v. Pool,* 645 F.Supp.2d 903, 906 (E.D.Cal.2009) (holding that no constitutional violation exists when DNA sample is collected after a probable-cause determination); *State v. O'Hagen,* 189 N.J. 140, 914 A.2d 267, 271, 281 (2007) (upholding constitutionality of statute requiring DNA collection from "[e]very person convicted or found not guilty by reason of insanity of *a crime*" (emphasis added) (quotation omitted)); *Anderson v. Commonwealth,* 274 Va. 469, 650 S.E.2d 702, 706 (2007) (upholding constitutionality of statute requiring DNA collection on arrest rather than on conviction); *see also* Cal.Penal Code § 296(a)(2) (West 2008) (requiring collection of DNA from any adult "who is arrested for or charged with"

various felony offenses); Tex. Gov't Code Ann. § 411.1471 (Vernon 2007) (requiring DNA collection from defendant who is "indicted or waives indictment for a felony"). Consequently, M.L.M.'s contention that DNA collection from those not convicted of a felony or other serious offense "has no validity or recognition anywhere in the country," is mistaken. We are not persuaded that Minnesota caselaw and foreign caselaw require a conclusion that collection of DNA from juvenile nonfelons is unconstitutional. *See Johnson*, 777 N.W.2d at 771 (finding similar arguments to be unpersuasive).

Finally, *C.T.L.* is sufficiently distinguishable to cause us not to rely on it for the proposition that M.L.M. advances, namely, that *C.T.L.* requires a conclusion that a juvenile adjudication for a misdemeanor offense does not justify DNA collection for identification purposes. In *C.T.L.*, we addressed a statute that permitted DNA collection upon a judicial finding of probable cause. 722 N.W.2d at 490. By contrast, section 609.117, subdivision 1(2), as applied here, is limited to those who have been *adjudicated delinquent* of a misdemeanor offense, and only if that misdemeanor adjudication arises from the same set of circumstances for which a felony was charged. Section 609.117's scope of application, therefore, is limited to those whose narrowly defined conduct has been proved beyond a reasonable doubt. *See Johnson*, 777 N.W.2d at 771 (addressing adult misdemeanant subject to DNA collection under same statute). Because the statute at issue here and the statute at issue in *C.T.L.* are distinguishable, M.L.M.'s reliance on *C.T.L.* is misplaced.

As we are not persuaded by M.L.M.'s arguments for categorically excluding nonfelonies, we now analyze the issue under the totality-of-the-circumstances test adopted by the Minnesota Supreme Court.

*See Bartylla*, 755 N.W.2d at 17–18 (examining the constitutionality of section 609.117, subdivision 1(1), by balancing the state's interests against the intrusion into the citizen's personal security). The Minnesota Supreme Court has recognized the state's substantial interests in DNA collection, including "exonerating the innocent, deterring recidivism, identifying offenders of past and future crimes, and bringing closure for victims of unsolved crimes." *Id.* at 18. The legislature has narrowly defined the juvenile misdemeanor adjudications to which section 609.117, subdivision 1(2), applies, such that the substantial state interests enumerated in *Bartylla* exist with equal force for these nonfelony adjudications. *See Johnson*, 777 N.W.2d at 771–72 (holding that substantial state interests described in *Bartylla* exist equally with regard to adults convicted of misdemeanor offenses).

These substantial state interests are balanced against the minimal intrusion involved in DNA collection for identification purposes and the reduced expectation of privacy held by a juvenile adjudicated delinquent for a misdemeanor arising out of the same set of circumstances as a charged felony. *See Bartylla*, 755 N.W.2d at 17–18 (describing the physical intrusion involved in DNA collection as "minimal"); *Johnson*, 777 N.W.2d at 771–72 (applying balancing test). We recognize that juveniles have been granted certain protections regarding confidentiality of records. *See* Minn. R. Juv. Delinq. P. 2.01 (closing juvenile court proceedings to the public); Minn. R. Juv. Delinq. P. 30.02, subd. 3 (requiring court order for release of juvenile records to the public); *In re Welfare of C.D.L.*, 306 N.W.2d, 819, 821 (Minn.1981) (stating that it would be "unfair to permit juvenile records to be used as though they were criminal records, being public information and following and harassing the juvenile throughout his life"); *State v. Schilling*,

270 N.W.2d 769, 772 (Minn.1978) ("The policy of keeping juvenile court records confidential is rehabilitative. Abrogation of the confidentiality will cause the juvenile some embarrassment and will remove some of the rehabilitative force of the juvenile justice system by removing incentives to keep out of trouble again."). Although juvenile court proceedings and records are generally confidential, reflecting the rehabilitative goals of the juvenile justice system, this policy of confidentiality does not undermine the constitutionality of section 609.117, subdivision 1(2).

Whether section 609.117, subdivision 1(2), as applied here, violates constitutional protections against unreasonable searches and seizures is a question of first impression. But we have addressed a due-process challenge to an earlier version of the statute involving the distinction between DNA collection from juveniles and DNA collection from adults. *In re Welfare of Z.P.B.*, 474 N.W.2d 651, 654 (Minn.App. 1991) (holding that DNA collection from a juvenile under Minn.Stat. § 609.3461 (1990), which was renumbered as Minn. Stat. § 609.117, did not violate appellant's constitutional right to due process). The analysis applied there is instructive. In *Z.P.B.*, the juvenile appellant argued that the statute's "failure to distinguish between adult and juvenile offenders ... undermines the goal of preserving the confidentiality of juvenile court proceedings and records." *Id.* Reasoning that the confidentiality of juvenile court records is statutory in origin, we held that "[t]he legislature has authority to create exceptions to the policy of confidentiality it created by statute." *Id.* By enacting the DNA-collection statute, the legislature created a mandatory exception to juvenile confidentiality in those limited circumstances. *Id.* Likewise, as applied here, although a general policy of confidentiality of juvenile records exists, the legislature has established an exception to that policy regarding DNA collection for identification purposes from juveniles who have been adjudicated delinquent in a narrowly defined set of circumstances. When those circumstances are satisfied, juveniles do not have a greater expectation of privacy than adults with regard to DNA collection for identification purposes under Minn. Stat. § 609.117.

Our conclusion that the constitutionality of section 609.117, subdivision 1(2), is not undermined by the offender's status as a juvenile also is supported by the caselaw and statutory provisions of foreign jurisdictions. Several states have enacted statutes that require DNA collection from juveniles, many of which have been upheld by appellate courts. *See, e.g., In re Calvin S.*, 150 Cal.App.4th 443, 58 Cal.Rptr.3d 559, 562–63 (2007) (affirming constitutionality of Cal.Penal Code § 296 (West 2002), concluding that DNA collection involves minimal intrusion, furthers the state's rehabilitation interests, and "has little impact on the minor's interest in the privacy of juvenile proceedings," because the statute is limited to identification purposes, which are exempt from laws requiring disclosure to the public and are released only to law enforcement); *In re Lakisha M.*, 227 Ill.2d 259, 317 Ill.Dec. 690, 882 N.E.2d 570, 578–79, 582 (2008) (affirming constitutionality of 730 Ill. Comp. Stat. 5/5–4–3 (2004), stating that "[t]he provisions of our Juvenile Court Act that afford minors greater privacy protections do so with respect to the general public," and "[t]here is nothing to suggest that these provisions indicate a legislative intent to provide juveniles with greater privacy rights with respect to law enforcement officials, who are the only ones given access to the genetic marker information derived from the searches required by the DNA indexing statute"); *A.A. ex rel. B.A. v. Att'y Gen. of N.J.*, 189

N.J. 128, 914 A.2d 260, 266 (2007) (affirming constitutionality of N.J. Stat. Ann. § 53:1–20.20(h) (2003), holding that expectation of privacy of a juvenile defendant "is so minimal as compared to the government's substantial interest" that no greater protection than that required for fingerprinting is required); *In re Nicholson*, 132 Ohio App.3d 303, 724 N.E.2d 1217, 1221 (1999) (affirming constitutionality of Ohio Rev.Code Ann. § 2151.315 (West 1998) as applied to juveniles, holding that minimal intrusion is outweighed by state's interest in recording offenders' identity and in deterring juveniles from committing future crimes); *see also* Ariz.Rev.Stat. Ann. § 13–610 (2009) (authorizing DNA collection from juveniles for certain arrests and delinquency adjudications); Fla. Stat. § 943.325 (2009) (same); Kan. Stat. Ann. § 21–2511 (2009) (same); Or.Rev.Stat. § 419C.473 (2009) (authorizing DNA collection from juveniles for certain delinquency adjudications); 44 Pa. Cons.Stat. Ann. · § 2316 (West 2009) ·(authorizing DNA collection from juveniles adjudicated delinquent for sex offenses); Tex. Fam. Code Ann. § 54.0405 (Vernon 2008) (authorizing DNA collection from juveniles placed on probation for sexual offenses); Wash. Rev.Code § 43.43.754 (2008) (DNA collection from juveniles for felonies and certain other offenses).

Applying *Bartylla's* totality-of-the-circumstances analysis and balancing the substantial state interests against the diminished privacy expectations of juvenile offenders who have been adjudicated delinquent under the particular circumstances contemplated by the statute and the minimal intrusion that exists here, we conclude that Minn.Stat. § 609.117, subd. 1(2), as applied to a juvenile who is adjudicated delinquent of a misdemeanor arising from the same set of circumstances as a charged felony, does not authorize an unreasonable search. ·Accordingly, M.L.M. has failed to prove beyond a reasonable doubt that the statute violates the protections against unreasonable searches and seizures established by the United States or Minnesota constitutions.

## II.

M.L.M. argues that Minn.Stat. § 609.117, subd. 1(2), denies her equal protection of ·the law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 2, of the Minnesota Constitution. The Equal Protection Clause of the Fourteenth Amendment provides, in relevant part: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The guarantee of equal protection of the laws requires that the state treat all similarly situated persons alike." *State v. Behl,* 564 N.W.2d 560, 568 (Minn.1997).

Before addressing the merits of M.L.M.'s equal-protection claim, we first must determine the appropriate legal standard to be applied. Statutory provisions are presumed valid and ordinarily will be sustained if the classification established by the statute is rationally related to a legitimate state interest. *In re Blodgett,* 490 N.W.2d 638, 645 (Minn.App.1992), *review granted* (Minn. Nov. 3, 1992), *aff'd,* 510 N.W.2d 910 (Minn.1994). But a statute that establishes classifications by race, alienage, or national origin, or that impinges on a fundamental right protected by the constitution is subject to strict scrutiny and will be upheld only if it is necessary to serve a compelling state interest. *Id.* M.L.M. maintains that strict scrutiny applies here because section 609.117, subdivision 1(2), impinges on her fundamental right to be free from unreasonable searches and seizures.

■ A probationer has a reduced expectation of privacy, and as a result, the Minnesota Supreme Court has applied a rational-basis standard of review to the warrantless search of a probationer's residence. *State v. Anderson,* 733 N.W.2d 128, 137–38 (Minn.2007). Indeed, the majority of courts in foreign jurisdictions that have addressed the issue have applied the rational-basis standard of review in equal-protection challenges to DNA-collection statutes. *See, e.g., Roe v. Marcotte,* 193 F.3d 72, 82 (2d Cir.1999); *L.S. v. State,* 805 So.2d 1004, 1007–08 (Fla.Dist.Ct.App. 2001); *Gaines v. State,* 116 Nev. 359, 998 P.2d 166, 173–74 (2000); *State v. Leppert,* 656 N.W.2d 718, 723 (N.D.2003); *State v. Olivas,* 122 Wash.2d 73, 856 P.2d 1076, 1087 (1993). These courts generally have concluded that "a convicted person has a diminished expectation of privacy and does not have a fundamental privacy right to be free from DNA testing." *Leppert,* 656 N.W.2d at 723. This reasoning applies with equal force to the facts here. A juvenile who has been adjudicated delinquent for a misdemeanor arising from the same set of circumstances as a charged felony has a similar reduced expectation of privacy and does not have a fundamental right to be free from DNA collection for the purpose of identification. We, therefore, apply the rational-basis standard of review to M.L.M.'s equal-protection challenge.

■ Having identified the applicable legal standard, we consider the threshold question of the identification of the classes being compared under M.L.M.'s equal-protection claim. The United States and Minnesota constitutions do not preclude legislative classifications; rather, they re-quire that the state treat all *similarly situated* persons alike. *Behl,* 564 N.W.2d at 568. Thus, "[a]n essential element of an equal protection claim is that the persons claiming disparate treatment must be similarly situated to those to whom they compare themselves." *St. Cloud Police Relief Ass'n v. City of St. Cloud,* 555 N.W.2d 318, 320 (Minn.App.1996), *review denied* (Minn. Jan. 7, 1997). M.L.M. fails to identify the similarly situated persons to whom she compares herself, instead relying on a general contention that "the warrantless, suspicionless search of non-felons is discriminatory in purpose and effect." Consequently, M.L.M. does not meet this essential element, and her equal-protection claim must fail.

M.L.M. alludes to her status as a "non-felon," arguing that searches of offenders who have committed such minor offenses cannot be justified by a compelling state interest. Were we to infer that this vague reference is an attempt to identify a similarly situated class, namely, those who have been adjudicated delinquent for a misdemeanor but were not charged with a felony, M.L.M. has not demonstrated that two similarly situated groups have been treated in an unequal manner by the DNA-collection statute. Section 609.117, subdivision 1(2), applies only to those who have been adjudicated delinquent for an offense that *arises from the same set of circumstances as a charged felony.* Because M.L.M. was charged with a felony arising from the same set of circumstances in addition to being adjudicated delinquent for a gross misdemeanor, she is not similarly situated to those who have been adjudicated delinquent for a misdemeanor but were not also charged with a felony.[2] Be-

---

**2.** We are mindful of the possibility that different charging decisions could determine the applicability of Minn.Stat. § 609.117, subd. 1(2), to only one of two juveniles who com-mitted the same criminal conduct in the same incident. But those facts are not present here, and we do not presume such disparate treatment in our analysis of the statute's con-

cause M.L.M. has not satisfied the first element of an equal-protection claim, we do not reach the rational-basis analysis. Accordingly, M.L.M. has not demonstrated that, as applied here, Minn.Stat. § 609.117, subd. 1(2), violates the right to equal protection guaranteed by the United States and the Minnesota constitutions.

## DECISION

Because Minn.Stat. § 609.117, subd. 1(2), as applied to a juvenile adjudicated delinquent for a misdemeanor offense arising from the same set of circumstances as a charged felony offense, does not authorize an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution or Article I, Section 10, of the Minnesota Constitution, the district court did not err by ordering collection of DNA from appellant. In the absence of any evidence of different treatment of similarly situated juvenile misdemeanants, appellant's equal-protection claim as applied here also fails.

**Affirmed.**

stitutionality based merely on the possibility of it occurring.